JOAN P. TOWNE, Plaintiff-Appellant, v. STEVEN COLE *et al.*, Defendants-Appellants.

Second District   No. 2—84—0669

Opinion filed May 17, 1985.

Julian R. Wilheim, of Lake Forest, for appellant.

Stephen R. Swofford, Michael F. Henrick, and Peter D. Sullivan, all of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

In this case, a grandmother brought suit against her son and his wife seeking a court order granting her visitation with their daughter, her only grandchild. The grandmother also sought money damages against her son and his wife for the serious mental and emotional distress caused by their denial of her visitation with her granddaughter. The son and his wife are the natural parents of the grandchild, are not involved in a dissolution of marriage proceeding, and no prior custody or adoption matters are involved.

The circuit court of Lake County dismissed the grandmother's suit, and this appeal was taken.

Joan P. Towne is the plaintiff. Defendant, Steven Cole, is plaintiff's natural-born son, and defendant, Barbara Cole, is Steven's wife,

who lives with him at the marital residence in Highland Park, along with their daughter, two-year-old Lauren Ashley Cole. Lauren Cole is plaintiff's only grandchild.

Plaintiff's complaint alleges the following:

That plaintiff is the natural mother of defendant Steven Cole and the mother-in-law of defendant Barbara Cole and the paternal grandmother of defendant's natural daughter born on April 20, 1983. She also alleges that, despite her requests to defendants since the birth of such granddaughter, who is her first and only living grandchild, for the privilege of reasonable visitation rights with the grandchild, defendants have denied and continue to deny any visitation or relationship with her grandchild, all without provocation on plaintiff's part and depriving such grandchild of any relationship with the plaintiff to the detriment of the grandchild. Plaintiff also alleges that she is a happily married woman of excellent reputation and substantial financial means.

Count I seeks equitable relief by way of a court order directing defendants to permit plaintiff to have and enjoy reasonable visitation privileges with her grandchild.

In count II, plaintiff alleges that, since the birth of her first and only grandchild, defendants, jointly and severally, have inflicted and continue to inflict intentionally on plaintiff extreme emotional distress by wilfully and maliciously depriving her of any visitation or relationship with the grandchild. Plaintiff further alleges that, without any justification on either of their parts or provocation on her part, the defendants have shown and continue to show anger and hostility toward her, threatening to cut off and cutting off any relationship of plaintiff with the grandchild and threatening to deprive and depriving the grandchild of a warm relationship with her paternal grandmother, all to the detriment of the grandchild's best interests. She also alleges that she has suffered and continues to suffer from her loss of visitation and companionship with her first and only living grandchild and her consequent mental and emotional stress and anxiety resulting therefrom, all to her severe and irreparable damage for which she has no adequate remedy in equity. Count II, pleading an action in tort, seeks compensatory and punitive damages.

Defendants filed a motion to dismiss pursuant to section 2—615 of the Civil Practice Law, asserting that the complaint failed to state a cause of action. Ill. Rev. Stat. 1983, ch. 110, par. 2—615.

The trial court ruled that it lacked jurisdiction to adjudicate count I and that counts I and II failed to state a cause of action.

Three issues are presented for review: (1) whether, in light of the

well-pleaded facts in plaintiff's complaint, the trial court erred in determining that it lacked jurisdiction to grant the relief sought in count I of the complaint and in granting defendants' motion to dismiss the complaint with prejudice; (2) whether in light of the well-pleaded facts in plaintiff's complaint, the trial court erred in determining that count I of the complaint failed to state a cause of action and in granting defendants' motion to dismiss the complaint with prejudice; (3) whether in light of the well-pleaded facts in plaintiff's complaint, the trial court erred in determining that count II of the complaint failed to state a cause of action and in granting defendants' motion to dismiss the complaint with prejudice.

■■ Defendants' motion to dismiss plaintiff's complaint pursuant to section 2—615 of the Civil Practice Law (Ill. Rev. Stat. 1983, ch. 110, par. 2—615) requires this court, as well as the trial court, to accept all facts well pleaded as true and to draw all reasonable inferences therefrom in favor of the plaintiff. (*Buzzard v. Bolger* (1983), 117 Ill. App. 3d 887.) The purpose of such a motion is to raise an issue of law as to the legal sufficiency of the allegations of the complaint. *Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273, 280.

The parties agree that the trial court dismissed the complaint in the belief that it had no jurisdiction of the cause of action because the defendants were not involved in dissolution of marriage proceedings, there was no custody proceeding instituted, nor was an adoption proceeding involved.

It is the plaintiff's contention that her complaint states a cause of action for child visitation under the plain language of section 607(b) of the Illinois Marriage and Dissolution of Marriage Act. Ill. Rev. Stat. 1983, ch. 40, par. 607(b).

Effective January 1, 1982, section 607 was amended by inserting a new subsection (b), as follows:

"(b) The court may grant reasonable visitation privileges to a grandparent or great-grandparent of any minor child upon the grandparent's or great-grandparent's petition to the court, with notice to the parties required to be notified under Section 601 of this Act, if the court determines that it is in the best interests and welfare of the child and may issue any necessary orders to enforce such visitation privileges." Ill. Rev. Stat. 1981, ch. 40, par. 607(b).

Effective September 17, 1982, section 607(b) was further amended by adding a final sentence, as follows:

"Further, the court, pursuant to this subsection, may grant

reasonable visitation privileges to a grandparent or great-grandparent whose child has died where the court determines that it is in the best interests and welfare of the child." Ill. Rev. Stat. 1983, ch. 40, par. 607(b).)

The plaintiff argues that section 607(b) confers jurisdiction on the trial court and that the well-pleaded facts in count I meet the substantive requirements of that section of the statute.

We have looked to the legislative history of the two amendments to section 607(b), effective during 1982, to seek aid in determining their meaning.

Our supreme court stated in *People v. Boykin* (1983), 94 Ill. 2d 138, 141:

" 'The cardinal rule of statutory construction, to which all other canons and rules are subordinate, is to ascertain and give effect to the true intent and meaning of the legislature.' [Citations.] In determining the legislative intent, courts should consider first the statutory language. [Citation.] As noted by the State, where the language is clear 'it will be given effect without resorting to other aids for construction.' [Citations.] Where the language is ambiguous, however, it is appropriate to examine the legislative history. [Citation.]' "

We believe it is not clear from a reading of section 607(b) as to whether it applies to grandparent visitation where there is no dissolution action pending, no adoption proceeding and no custody proceeding and no death of a parent.

The first amendment to section (b) was made by H.B. 64, which was enacted as Public Act 82—344, to be effective January 1, 1982. Its sponsor in the House, Representative Matijevich, explained to the House that the amendment would grant reasonable visitation privileges to grandparents. He stated: "The legislation will help assure that close grandparent-child ties and relationships will not be severed by divorce." (Ill. House of Representatives, Transcription of Debate, May 6, 1981, at 146.) Although most of the discussion concerned the pros and cons of opening the door to visitation battles by parents and grandparents after a divorce, Representative Brummer pointed out that in his view the bill would allow grandparent visitation even where there is no divorce or separation. Illinois House of Representatives, Transcription of Debate at 154.

On the Senate side, the co-sponsor, Senator Geo-Karis, introduced the bill and commented:

"Wisconsin was the first State to pass a law granting grandparents the right to petition the court for visitation privileges

when there is a divorce in the family. And since then, twenty-six States have enacted similar Statutes. I ask for favorable consideration." (Ill. Senate Proceedings, June 18, 1981, at 87.)
There was no other debate.

We also note that the second amendment to section 607(b) would not have been necessary if we were to accept the plaintiff's reading of the original amendment to section 607(b).

The second amendment was H.B. 2039, enacted by Public Act 82—1002, effective September 17, 1982. That amendment added this to subparagraph (b):

"Further, the court, pursuant to this subsection, may grant reasonable visitation privileges to a grandparent or great-grandparent whose child has died where the court determines that it is in the best interests and welfare of the child." Ill. Rev. Stat. 1983, ch. 40, par. 607(b).

It is obvious this provision was inserted to provide a remedy for grandparent visitation when there were no dissolution proceedings but where one of the parents had died. That this was idea of the Senate sponsors is apparent from the debate on that amendment:

"SENATOR BRUCE: Yeah. A year ago, as you say . . . recall, under the Marriage and Dissolution Act we allowed grandparents to petition the court to have visitation rights in a marital dissolution. After that bill was passed, some attorneys, in which there was a death of one of the parents, have alleged that they have no right to petition, so this adds that one additional clause . . . the grandparent visitation question has been resolved in divorces. All this adds is the additional time as when one parent has died, they can still petition . . . in other words, you would not have to have a dissolution of the marriage, but if there was a . . . a death of one parent, the grandparent could go into court, petition the court to have visitation rights.

PRESIDING OFFICER (SENATOR SAVICKAS): Senator Walsh.

SENATOR WALSH: Well, I know, of course, in the event of a dissolution, we have a continuing proceeding where there are minor children involved. We have apparently under this bill a situation where there has been no litigation, just the death of a parent so that a grandparent in a sense, will be able to file a . . . a new action in court to request that that grandparent be permitted visitation where there had been no . . . there had been no court proceeding prior thereto, is that correct?

PRESIDING OFFICER (SENATOR SAVICKAS): Senator Bruce.

SENATOR BRUCE: That is correct. They would have the option of filing de novo action by . . . by a petition and asking that the court grant visitation rights, if it was in the best interest of the child.

\* \* \*

SENATOR GEO-KARIS: Mr. President and Ladies and Gentlemen of the Senate, to answer the last query, this amendment and I have . . . don't want this amendment confused with the prior one, provides that a court may grant visitation privileges to a grandparent or a great-grandparent whose child has died where the court determines it is in the best interest of the child. It's . . . this amendment clarifies that grandparent visitation rights may be granted not only in dissolution of marriage cases, as we passed last year, but also when a parent dies. This is a very crucial bill. It's a good bill and I don't think the amendment is bad, because when a child is adopted, for example, it's . . . it . . . it . . . it . . . it has . . . it has the same rights as a child born of a natural . . . parents and I think it's a good bill, and I urge its favorable consideration."

The House of Representatives' debate on this amendment indicated its interpretation to be the same as that in the Senate:

"Brummer: Yes. Very briefly, a couple of questions of Representative Leinenweber with regard to House . . er . . Senate Amendment #2 concerning grand-parental visitation. I read the existing language and it says, "'. . . the court has reasonable . . . may grant reasonable visitation privileges to a grandparent'. What is added-by the new Amendment?

Leinenweber: That has been construed to be only divorce situations. .

Brummer: Well, the reason I thought it only . . . it was construed to be only divorce situations was because it was in a family . . law Chapter, and what we're doing here is amending the same Section. Now, Representative Catania's Bill that had passed out of here previously that I had worked with her on, amended the Probate Act because I . . I thought it was appealing to staff that that was a more appropriate place for the Amendment. And the reason that we decided not to amend Section 607 is because it only does deal with instances where the parents are divorced or legally separated. And I, for the life of me, in reading this language, cannot understand how

we're adding anything additional to the statute.

Leinenweber: Well, it . . I've been advised by staff that it fits there. It probably should have been put in the Probate Act, but we're here on a concurrence and it will get the job done. If you're for grandparental visitation in this particular situation, this will grand authority to a court to do that. It might be a little difficult for lawyers to find. But once they find it, I'm sure that . . .

Brummer: But if you have the language in front of you, the Amendment in front of you, the language immediately prior to the new language says the court may grant reasonable visitation privilege to a grandparent or [great-]grandparent of any minor child upon the grandparent or great-grandparent's petition to the court. I just simply don't understand how the additional four or five lines that we're adding add anything new to that.

Leinenweber: All right. All right. This Section is part . . . where it's located in the Marriage and Dissolution of Marriage Act is located in such a way that it's obvious that this particular language, pre-existing language, in Section 607 applies only to a divorce setting. That's why the additional language was necessary. Now, I think we would agree that this language more properly should have gone to the Probate Act, but it wasn't put there. So . . But it will get the job done."

At common law, grandparents were granted visitation privileges only under special circumstances, for they lacked any legal right to visitation with their grandchildren if such visitation was forbidden by the parents. (See *Boyles v. Boyles* (1973), 14 Ill. App. 3d 602; *Lucchesi v. Lucchesi* (1947), 330 Ill. App. 506; *Solomon v. Solomon* (1943), 319 Ill. App. 618.) In the absence of special circumstances, a granting of visitation privileges to a grandparent over objections of a parent constituted reversible error. (*Chodzko v. Chodzko* (1976), 66 Ill. 2d 28.) The common law rule requiring a showing of special circumstances was modified, and Illinois law now expressly provides for grandparent visitation in certain instances. In cases of dissolution of marriage or death of a parent, a court is empowered to grant grandparent visitation when it is in the child's best interest to do so. (Ill. Rev. Stat. 1983, ch. 40, par. 607(b); Ill. Rev. Stat. 1983, ch. 110½, par. 11—7.1; *In re Adoption of Schumacher* (1983), 120 Ill. App. 3d 50.) Although plaintiff argues that her complaint states a cause of action for visitation based on section 607(b), since there is no divorce or death alleged in the present case, we conclude that section 607(b) is inapplicable.

Accordingly, it is our opinion that the trial court properly held that it lacked authority to grant visitation rights in the absence of an express statutory provision. It is our view that plaintiff is asking this court to recognize a cause of action which does not now exist in Illinois. This we refuse to do. Although from plaintiff's point of view our conclusion may appear harsh, we believe that any obligation which defendants may have to allow visitation remains a moral obligation, not a legal one. (See generally Annot., 90 A.L.R.3d 222 (1979); see also 59 Am. Jur. 2d *Parent and Child* sec. 92 (1971).) As the Supreme Court of Arkansas stated in *Cox v. Stayton* (1981), 273 Ark. 298, 304, 619 S.W.2d 617, 621:

> "What the appellants ask us to do through this line of argument is to recognize some form of inherent 'grandparental rights' beyond those previously bestowed. This we decline to do, not out of disregard for the genuine relational ties which naturally exist between grandparents and grandchildren, but rather for the reason that the sanctity of the relationship between the parent and the child must be the overriding concern. To create new, enforceable rights in grandparents could lead to results that would burden rather than enhance the welfare of children."

■ We also find that plaintiff's claim fails to state a cause of action for the intentional infliction of emotional distress. In order to establish such a claim, plaintiff must allege conduct of an extreme and outrageous nature resulting in her severe emotional distress. (*Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85.) We feel that plaintiff's allegations in the present case fall short of these requirements. As stated above, the rights of the natural parents to regulate their children's lives, absent divorce or death or other unusual circumstances, are superior to the rights of others. Although it may be possible that some would view the actions of the parents in the present case as morally reprehensible, their behavior is nevertheless within their legal rights. Furthermore, we do not agree that the distress alleged by plaintiff meets the standard of being so severe that no reasonable man could be expected to endure it, as set forth in *Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85.

Accordingly, we affirm the judgment of the circuit court of Lake County.

Judgment affirmed.

LINDBERG and REINHARD, JJ., concur.