**W.R. KING, Movant,**

v.

**Stewart KING and Ann King, Respondents.**

Nos. 90–SC–495–DG, 90–SC–502–DG.

Supreme Court of Kentucky.

March 12, 1992.

Rehearing Denied June 4, 1992.

As Amended July 2, 1992.

James F. Clay, Jr., Danville, for movant.

James W. Williams, III, Stanford, for respondents.

JAMES H. LUCAS, Special Justice.

The respondents, Stewart and Ann King, are husband and wife and are the parents of one child; a daughter, Jessica, born April 24, 1987. The movant, W.R. King, is Stewart's father and Jessica's paternal grandfather.

Until August of 1988, Stewart and his family lived in a house located upon Mr. King's farm which he had built for them. Stewart was employed full time by the R.R. Donnelly Company in Danville, Kentucky, and also worked on the family farm. The home was provided rent-free and, in addition, Stewart received approximately $2,800 per year from the farm's tobacco crop. Mr. King did not feel that Stewart was putting in enough hours on the farm and, subsequently, ordered him to move out of the house, which he and his family did. To summarize the testimony of the witnesses, Mr. King thought his son drank too much and did not do enough work, and Stewart and his wife thought his father was overbearing and intrusive.

While Stewart and his family were living on the farm, Mr. King had almost daily contact with Jessica for a period of some 16 months. After Stewart and his family were asked to leave, Mr. King requested that he be allowed to see Jessica. This

request was denied by Stewart and his wife. Mr. King's attorney then wrote a letter to the younger Kings, again requesting visitation with the granddaughter, but again the request was denied.

Mr. King then filed a Petition for Visitation in the Boyle Circuit Court to which Stewart and Ann responded, generally denying the allegations of the petition and challenging the constitutionality of KRS 405.021. The attorney general declined to intervene. A hearing was held on November 16, 1988, at which time the court referred all of the parties, including Jessica, to the Comprehensive Care Center in Danville, Kentucky, for evaluation, mediation and recommendation. After receiving the report of the Comprehensive Care Center, the court granted visitation by the grandfather with Jessica from 4 p.m. to 6 p.m. each Wednesday and Saturday. The respondents timely filed a motion to alter, amend or vacate, at which time a second hearing was held and the court heard further testimony from the respondents. On January 6, 1989, the court entered its finding of facts, conclusions of law and judgment, upholding the constitutionality of KRS 405.021 and finding that the best interest of the infant child, Jessica, would be served if her grandfather was granted visitation rights.

The respondents then appealed this matter to the Court of Appeals which did not reach the constitutional issue, but reversed the decision of the Boyle Circuit Court on the issue of the best interest of the child. Discretionary review was then granted by this Court.

Two issues are presented on appeal: first, the constitutionality of KRS 405.021; and second, if the statute is constitutional, did the trial court err in finding that the best interest of the child would be served by allowing the grandfather the right of visitation.

KRS 405.021 provides as follows:

REASONABLE VISITATION RIGHTS TO GRANDPARENTS. (1) The circuit court may grant reasonable visitation rights to either the paternal or maternal grandparents of a child and issue any necessary orders to enforce the decree if it determines that it is in the best interest of the child to do so.

(2) The action shall be brought in Circuit Court in the county in which the child resides.

■ Counsel for the respondents vigorously argues that the statute in question constitutes an unwarranted intrusion into the liberty interest of parents to rear their children as they see fit. While not being all-inclusive, the Supreme Court of the United States in *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), attempted to define the liberty interest protected by the Fourteenth Amendment of the Constitution of the United States as follows:

Without doubt, it denotes not merely freedom from bodily restraint, but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men. *Id.* at 399, 43 S.Ct. at 626.

While the Constitution, as interpreted by the various courts, does recognize the right to rear children without undue governmental interference, that right is not inviolate. Parents are required by law to see that their children are educated. Children must be inoculated against disease. Parents cannot abuse their children. Severe restrictions are placed upon the employment of children. Children must be restrained when riding in a motor vehicle. Thus, over the years, there has been increased legislation guaranteeing the safety, education, and the physical and emotional welfare of children. Under ordinary circumstance, few would dispute that there are benefits to be derived from the establishment of a bond between grandparent and grandchild. While it may be desirable for aunts and uncles and cousins to have a close relationship with each other, our General Assembly has seen fit to protect visitation only by

grandparents, and then only if it can be demonstrated to be in the best interest of the child. Our courts have strictly interpreted this provision. The Court of Appeals refused to extend the right to great-grandparents in *Cole v. Thomas*, Ky.App., 735 S.W.2d 333 (1987), and this Court in *Hicks v. Enlow*, Ky., 764 S.W.2d 68 (1989), denied visitation by grandparents if the child had been adopted and when the parental rights of one of the parents had been terminated.

In an era in which society has seen a general disintegration of the family, it is not unreasonable for the General Assembly to attempt to strengthen familial bonds. As this Court observed in *Hicks, supra,* "the grandparents' visitation statute was an appropriate response to the change in the demographics of domestic relations, mirrored by the dramatic increase in the divorce rate and in the number of children born to unmarried parents, and the increasing independence and alienation within the extended family inherent in a mobile society." *Id.* at 70 and 71. There is no reason that a petty dispute between a father and son should be allowed to deprive a grandparent and grandchild of the unique relationship that ordinarily exists between those individuals. One of the main purposes of the statute is to prevent a family quarrel of little significance to disrupt a relationship which should be encouraged rather than destroyed.

As noted in *Meyer, supra,* "The established doctrine is that this liberty may not be interfered with under the guise of protecting the public interest by legislative action which is arbitrary or without reasonable relation to some purpose within the competence of the state to effect." *Id.* 262 U.S. at 400, 43 S.Ct. at 627. However, it is not unreasonable for the state to say that the development of a loving relationship between family members is desirable and the arbitrariness of the statute is obviated by the requirement that visitation be granted by a court only after finding that it is in the best interest of the child.

"That the state may do much, go very far, indeed, in order to improve the quality of its citizens, physically, mentally and morally, is clear; but the individual has certain fundamental rights which must be respected." *Id.* at 401, 43 S.Ct. at 627. This statute seeks to balance the fundamental rights of the parents, grandparents and the child.

At common law, grandparents had no legal right to visitation, *Jouett v. Rhorer*, Ky., 339 S.W.2d 865, 868 (1960). However, the General Assembly determined that, in modern day society, it was essential that some semblance of family and generational contact be preserved. If a grandparent is physically, mentally and morally fit, then a grandchild will ordinarily benefit from contact with the grandparent. That grandparents and grandchildren normally have a special bond cannot be denied. Each benefits from contact with the other. The child can learn respect, a sense of responsibility and love. The grandparent can be invigorated by exposure to youth, can gain an insight into our changing society, and can avoid the loneliness which is so often a part of an aging parent's life. These considerations by the state do not go too far in intruding into the fundamental rights of the parents. Thus, we find that KRS 405.021 is constitutional.

Central to our finding is the protection afforded the child, the parents and the grandparents. If the statute gave the grandparents the unrestricted right of visitation, there would be much less reluctance to declare it unconstitutional. But visitation cannot be granted until an action is filed in Circuit Court, a hearing conducted before a judge or commissioner, and findings of fact and conclusions of law entered finding that the best interests of the child will be served by granting or denying visitation. Fortunately, it is not a common occurrence for this statute to be called into play, but when it is, the parties are afforded ample protection to preclude either injustice or an unwarranted intrusion into the fundamental liberty of the parents and child.

In the instant case, there were two hearings and a psychological evaluation of all the parties before the trial court entered

its decree. Jessica's father testified that he had no qualms about his father's ability to love and care for the child. The condition and safety of Mr. King's home was never in issue as Jessica had been left there many times and there appeared to be no question that she would receive proper care during periods of visitation. There appears to be no valid reason that a trivial disagreement between a father and son should be allowed to deprive a grandparent and grandchild from developing the natural affinity so common between these family members.

For the reasons herein stated, the decision of the Court of Appeals is reversed and the order of the Boyle Circuit Court is reinstated.

STEPHENS, C.J., and COMBS, LEIBSON, and SPAIN, JJ., concur.

LAMBERT, J., dissents with a separate opinion in which WINTERSHEIMER, J., joins.

WINTERSHEIMER, J., dissents with a separate opinion in which LAMBERT, J., joins.

LAMBERT, Justice, dissenting.

The issue here is not as the majority presents it. The issue is not whether visitation with a grandparent is desirable and in the best interest of the grandchild. Rather, the issue is whether the state, by enactment of a statute which has as its only standard the subjective requirement of "best interest," may invade an intact nuclear family and require that family to deliver its minor child to another person for visitation. The opinion of the majority makes little pretense of constitutional analysis but depends entirely on the sentimental notion of an inherent value in visitation between grandparent and grandchild, regardless of the wishes of the parents. The fatal flaw in the majority opinion is its conclusion that a grandparent has a "fundamental right" to visitation with a grandchild. No authority is cited for this proposition as there is no such right.

The statement of facts in the majority opinion is not entirely unbalanced, but it omits several facts important to an understanding of the case. As found by the trial court, movant placed great demands on his son, Stewart King, respondent herein, to work on movant's farm in exchange for free rent and a portion of the crop proceeds. Respondent's farm work was in addition to a full-time factory job and when he did not perform as his father expected, he was ordered to move from the premises. Moreover, the evidence is clear that movant is an overbearing individual who intruded with impunity upon respondents' family life demonstrating total indifference to their wishes. Finally, the majority fails to mention that movant openly cohabits with Emarine Cash, a woman to whom he is not married, and that the trial court granted Emarine Cash, a woman with no marriage or blood kinship to the infant child, a right to pick up the child for visitation.

There is no doubt that parents have an "essential" liberty interest, free of state interference, in the rearing of their children. *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). Such interest has been described as "basic civil rights of man" (*Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942)) and "far more precious than property rights" (*May v. Anderson*, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953)). In *Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (plurality opinion), the Court acknowledged an extreme limitation on governmental intrusion into family affairs.

> "[W]hen the government intrudes on choices concerning family living arrangements, the Court must examine carefully the importance of the governmental interests advanced and the extent to which they are served by the challenged regulation."

The right of parents to control the upbringing of their children was expressly recognized in *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925):

> "[W]e think it entirely plain that the [statute] unreasonably interferes with the liberty of parents and guardians to

direct the upbringing and education of children under their control...."

In a far-reaching decision, *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), the Court held that the legitimate state interest in promoting secondary education was insufficient to overcome the wishes of the parents to the contrary. While the Court's decision in *Yoder* was based in part on First Amendment grounds, the Court noted that such education was

> "in marked variance with Amish values and the Amish way of life; they view secondary school education as an impermissible exposure of their children to a 'worldly' influence in conflict with the beliefs." *Yoder, supra.*

Relying on *Pierce v. Society of Sisters, supra,* the Court said:

> "[T]he values of parental direction of the religious upbringing and education of their children in their early and formative years have a high place in our society." *Yoder, supra.*

The right to family autonomy which had been recognized in various earlier decisions was flatly declared an express right in *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). In determining what standard of proof was necessary in termination of parental rights cases, the Court forcefully reiterated its view as to the rights of parents in their child:

> "The absence of dispute [that parents have a due process right in termination cases] reflected this Court's historical recognition that freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment. (Citations omitted.) The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." 455 U.S. at 753, 102 S.Ct. at 1394.

The foregoing cases fully demonstrate that parents have a fundamental liberty interest in maintaining an autonomous family unit except in limited circumstances, some of which are identified in the majority opinion, in which the state has been determined to have a compelling interest. There is no doubt that court-ordered visitation with a minor child by one outside the nuclear family amounts to an invasion of family autonomy. The question thus becomes what is the compelling state interest in requiring visitation between a grandchild and grandparent when the nuclear family is intact and functioning in a satisfactory manner.

The majority opinion and the statute seem to rely on the idea, in addition to the erroneous belief of a fundamental right in the grandparent, that the lives of the grandchild and grandparent are enriched by their association. While such may be true in many cases, while in others it is not, mere improvement in quality of life is not a compelling state interest and is insufficient to justify invasion of constitutional rights. So long as a family satisfies certain minimum standards with respect to the care of its children, the state has no interest in attempting to "make things better."

It could not be disputed that the lives of most children could be theoretically improved by placing them with a more loving, attentive, and affluent family. None would seriously argue, however, that the state possesses the power to redistribute the infant population in such a manner simply because of its perception that a child would be better off somewhere else. Before the state should be permitted to intervene in the relationship between parent and child, there must be a determination that the care of the child fails to satisfy minimum standards.

Recent Kentucky authority has recognized the

> "fundamental, basic and constitutionally protected rights [parents have] to raise their own children and that any attack by third persons (and this would include grandparents in that category) seeking to abrogate that right must show unfitness by 'clear and convincing evidence.'" *Davis v. Collinsworth*, Ky., 771 S.W.2d 329 (1989).

In *Davis,* the litigation was between a paternal grandmother and the natural mother. The trial court found the mother to be unfit and determined that the best interest of the child was to place custody with the grandmother. The Court of Appeals and this Court reversed relying on *Santosky, supra, Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), and *McNames v. Corum,* Ky., 683 S.W.2d 246 (1985). We reiterated the rule that a finding of unfitness must be by clear and convincing proof and described factors which showed unfitness and that poverty alone was an insufficient basis to deprive the mother of custody. Thus, we recognized that a showing of general improvement of the child's life is insufficient to deprive the natural parent of custody. We required a showing of harm to the child by virtue of parental unfitness. There is no reason a similar rule should not be applied in an action for grandparent visitation. Absent a showing of harm to the child, there is no compelling state interest in intervention into the affairs of an autonomous family and any statute which authorizes such intervention violates the parents' liberty interest under the Fourteenth Amendment.

In its opinion, the majority omits the foregoing essential step in the analysis. Rather than focus on the child for possible harm, it makes the *per se* assumption that deprivation of access to the grandparent is harm. There is no authority for this proposition and it is otherwise illogical.

While court-ordered visitation is an invasion of family autonomy, one may ask why not balance the interests of the parties and require the parents to suffer minor denigration of their rights in favor of the benefits presumed from association between the grandchild and grandparent. The answer to this question is eloquently stated in Bean, *Grandparent Visitation: Can the Parent Refuse?,* 24 U.Lou.J.Fam.L. 393 (1985), as follows:

> "Some parents and judges will not care if children are physically disciplined by the grandparents; some parents and judges will not care if the grandparents teach children a religion inconsistent with the parents' religion; some judges and parents will not care if the children are exposed to or taught racist beliefs or sexist beliefs; .... But some parents and some judges will care. Between the two, the parents should be the ones to choose not to expose their children to certain people or ideas, and without a showing that this deprivation has harmed the child in some way beyond a per se disassociation with the grandparents, the family's private decision-making should not be tried in a court of equity. Instead, the grandparents' request and justification for visitation should be subject to scrutiny and should be proved necessary to the welfare of the child."

A final point should be made. In 1984, the Legislature authorized courts to grant visitation rights to grandparents. While many children undoubtedly have a close familial bond with their grandparents, other children have close bonds with adult siblings, aunts and uncles, cousins, stepparents and step-grandparents, and neighbors. If the grandparent visitation statute passes constitutional muster, there is no reason to believe a similar statute could not be enacted for benefit of a host of other relatives or even family friends. Under the majority opinion, there is no reason to doubt the constitutionality of a statute, if one should be enacted, which gave standing to virtually any person who claimed to be devoted to the child; and upon a court determination of best interest, allow that person visitation rights regardless of the parents' wishes. Manifestly, such a statute would result in chaos for parents as they attempt to rear their children.

For the foregoing reasons, I dissent.

WINTERSHEIMER, J., joins in this dissenting opinion.

WINTERSHEIMER, Justice, dissenting.

I respectfully dissent from the majority opinion because the trial court was clearly erroneous in finding that the grandfather met his burden of proof. The grandfather failed to prove that forced visitation was in the best interests of the infant child. The

majority opinion has misapplied the standard of review and misinterpreted the law.

I agree with the Court of Appeals that it is unnecessary to reach the constitutional questions in this case because the grandfather has failed to meet his burden of proof. The grandfather has produced no evidence that it is in the best interests of the child to require grandparent visitation upon a nonconsenting parent living in an intact family.

This is a particularly fact-intensive case. An examination of the record indicates that the circuit court conducted two separate hearings on the question and ordered the parties and the 19 month old child to undergo a series of evaluations by the comprehensive care center as to the best interests of the infant child and its relation to the parties involved. The grandfather produced no evidence that it was in the best interest of the child to have forced visitation with her grandfather. His testimony does not touch the question of the child's best interests. The only other possibly relevant document in the record is a report by a "certified psychologist with autonomous functioning" which recommends a two-hour visitation period per week. This report does not satisfy the legal burden of proving the best interests of the child. It admitted that the likelihood of preservation of an emotional relationship between the child and the grandfather was based on an assumption and the recommendation was a mere average of the position of the parties, not one based on the child's best interests. The evaluator made no mention how the child's best interests would be promoted by visitation with the grandfather.

The trial judge stated in part that there is no allegation that it is not in the best interests of the child that she know the grandfather. Clearly this is a double negative and a rather bizarre twist to the standard of proof which is placed on the natural parents. Such a finding is clearly erroneous because the statute requires an affirmative finding that visitation would be in the best interests of the child. *Cf.* CR 52.01. The burden of proof is on the grandfather. The majority opinion also seems to be enunciating a negative standard insofar as there was no question about proper care during the visitation. That is not the issue. The issue is the burden of proof.

The parents are in the best position to know and determine what serves the best interests of their child, and such determination must be given great weight. The grandfather must overcome the initial responsibility of the parent in order to question the decision of the natural parents.

The authorities cited by the majority and the grandfather in regard to the enforcement of K.R.S. 405.020 are based on a totally different fact pattern than that now before this Court. Visitation ordered by a court over the objection of the natural parent in an intact family can be nothing other than forced by the state.

At common law, grandparents did not have the legal right to visit a grandchild over the objection of the parent. American courts followed this rule until the 1960's when states began to grant grandparent visitation rights under certain limited circumstances. All fifty states now have some kind of grandparent visitation statute.

The real issue here is to what extent the statutorily-created right of grandparent visitation will be permitted to override the fundamental natural inherent constitutional right of parents in an intact family unit.

It is fundamental that parents are entitled to raise their children in a proper home environment without any interference by the state or other third party. Governmental intervention can be justified only when there is a clear and definite showing that the parental decision would result in harm to the child or otherwise impinge on the child's best interests.

The basis of state intervention has always been some kind of harm to the child and the United States Supreme Court has frequently recognized family autonomy as being entitled to constitutional protection. *See Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Prince v. Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944); *Ginsberg v. New York*, 390 U.S. 629, 88 S.Ct. 1274, 20

L.Ed.2d 195 (1968); *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

Historically it has been recognized that natural bonds of affection lead parents to act in the best interests of their children. "The Constitutional Constraints on Grandparents' Visitation Statutes", 86 Columbia Law Review 118 (1986), *Judith L. Shandling.*

Any interference upon the fundamental right of the parents must pass the constitutional test of harm to the child to support a compelling governmental interest which would permit such interference. *See* 16A C.J.S., *Constitutional Law* § 464(a).

K.R.S. 405.025 gives broad range to the right of grandparents to visit. It is up to the judicial branch of government to safeguard the fundamental constitutional rights of an intact family to unwanted interference from either the grandparents or the state.

In commenting on the Tennessee statute which is very similar to Kentucky's, *Sharon F. Ladd* "Notes", 15 Memphis State Law Review 635 (1985) wrote, "If the natural parents have a viable marriage, it is not wise to allow parents of either parent to bring suit as this could have a devastating effect on the marriage and therefore the child."

Similar concerns relative to the authority of parents in an intact family to prevent undue interference can be found in *Theodore R. v. Loretta A.J.,* 124 Misc.2d 546, 476 N.Y.S.2d 720 (1984); *Towne v. Cole,* 478 N.E.2d 895, 88 Ill.Dec. 404, 133 Ill. App.3d 380 (1985); *In re Meek,* 443 N.E.2d 890 (Ind.App.1983); *McCarty v. McCarty,* 559 So.2d 517 (La.App. 2d Cir.1990); *Thompson v. Vanaman,* 515 A.2d 1254, 212 N.J.Super. 596 (A.D.1986); *Herron v. Seizak,* 321 Pa.Super. 466, 468 A.2d 803 (1983).

The problems incident to a broad statute such as Kentucky's have been recognized by *Kathyleen S. Bean* "Grandparent Visitation: Can the Parent Refuse" 24 Journal of Family Law 393 (1985–86).

In an appeal from a county court, the Delaware Family Appellate Court gave an extended and careful analysis to the arguments of grandparents in *Ward v. Ward,* 537 A.2d 1063 (Del.Family Court 1987), which observed in part that the interests of grandparents may be limited when they conflict with the interests of the child's parents. The Delaware Family Court has authority to rule on constitutional questions in that state.

Wisconsin, in *Van Cleve v. Hemminger,* 141 Wis.2d 543, 415 N.W.2d 571 (App.1987), stated that in the absence of a dissolving family relationship there is no justifiable reason for the state to override determinations made by the parents as to what is in the best interests of their children.

Section 2 of the Kentucky Constitution prohibits the "absolute and arbitrary power" over the lives ... of free men...." Here the parents have a significant liberty interest in the right to raise their daughter free of interference by the state or any other person in the absence of harm to the child. There is no evidence of any governmental interest that needs to be protected in this specific situation.

Here K.R.S. 405.021 is unconstitutional in its application to the right of the parents to raise their child when there has been no demonstration that the child's best interests will be harmed by the decision of the parents. *Cf. Saylor v. Hall,* Ky., 497 S.W.2d 218 (1973); *Pierce, supra.*

The Court of Appeals was correct in its decision. Parents in an intact family situation have an inherent constitutional right to raise their child free from interference from any third party, including the state. The integrity, privacy and sanctity of the American family must be jealously protected. The majority decision is a radical extension of the existing statute and as such results in an impermissible interference in the family unit. The parents and their child have been deprived of their right of privacy; the right to be left alone by the state or any third party.

It is unfortunate that the parents and grandparent cannot function as a harmonious extended family unit. Certainly, it is

the responsibility of parents to promote and strengthen association between grandchildren and grandparents. However, in certain situations this cannot be achieved and the immediate intact family unit must take priority over the extended family unit. In reaching such decisions, the courts must recognize the best interests of the child standard and apply it reasonably to the specific situation.

I am not unmindful of the need of a right for grandparent visitation in a fragmented family, but no governmental authority or state may use the law to force grandparent visitation on nonconsenting parents living in an intact family unit. Clearly there are situations where the family is deteriorating that need attention. This is not such a situation. This is clearly governmental interference.

I would affirm the decision of the Court of Appeals.

LAMBERT, J., joins in this dissent.