**Jason SCOTT and Holly Scott, Appellants,**

v.

**Richard SCOTT and Tammy Scott, Appellees.**

No. 2001–CA–000447–MR.

Court of Appeals of Kentucky.

June 21, 2002.

Kurt R. Denton, Neel, Wilson & Clem, Henderson, KY, for Appellants.

No brief for Appellees.

Before EMBERTON, HUDDLESTON and McANULTY, Judges.

*OPINION AND ORDER*

HUDDLESTON, Judge.

Jason and Holly Scott, the parents of a minor female child, appeal from a Henderson Circuit Court order awarding Richard and Tammy Scott visitation with their granddaughter. Jason and Holly argue that, as applied to them, court-ordered grandparent visitation, awarded pursuant to Kentucky Revised Statutes (KRS) 405.021, results in an unconstitutional interference with their right to raise their child as they see fit.[1]

KRS 405.021, Kentucky's grandparent visitation statute, has withstood a facial constitutional challenge. In *King v. King*,[2] the Supreme Court of Kentucky held that the statute passes constitutional muster. The Court assumed that a special bond exists between grandparents and grandchildren, which must be considered in abridging the fundamental right of parents to object to grandparent contact.[3] "The arbitrariness of the statute," the Court said, "is obviated by the requirement that visitation be granted by a court only after finding that it is in the best interest of the child." [4]

In awarding visitation to Richard and Tammy, the circuit court cited *King* in presuming that a grandchild would ordinarily benefit from contact with his or her grandparents and that grandparents and grandchildren normally have a special bond that cannot be denied.[5] The court then cited *Baker v. Perkins*[6] for the proposition that the custodial parents' opposition by itself is insufficient to deny grandparent visitation. Finally, the court concluded its analysis by stating that it found "no evidence to overcome the basic rule that [the Scotts' child] will benefit from contact and a relationship with her paternal grandparents," and concluded that grandparent visitation would be in the child's best interest.

Jason and Holly argue on appeal that the court's assumption of that "basic rule"

---

**1.** Jason and Holly have moved for penalties pursuant to Ky. R. Civ. Proc. (CR) 76.12(8) against Richard and Tammy based on their failure to file a brief in this Court. Under CR 76.12(8), we may accept Jason and Holly's statement of the facts and issues as correct, reverse the judgment if we believe their brief supports such a result, or treat Richard and Tammy's failure to file a brief as a confession of error and reverse the judgment without reaching the merits of the case. Because of the significant implications of Jason and Holly's challenge to KRS 405.021 in light of a

recent United States Supreme Court decision, we decline to summarily dispose of this case and will instead reach its merits.

**2.** Ky., 828 S.W.2d 630 (1992).

**3.** *Id.* at 632.

**4.** *Id.*

**5.** *King, supra,* n. 2.

**6.** Ky.App., 774 S.W.2d 129 (1989).

of grandparent benefit amounted to a presumption in favor of grandparent visitation, and that the court improperly imposed the burden of proof on them to demonstrate why court-ordered grandparent visitation would not be in the child's best interest. They contend that such a burden impermissibly interferes with their right to raise their child as they see fit, and that the court's decision is based on an unconstitutional application of KRS 405.021.

The circuit court failed to address the decision of the United States Supreme Court in the case of *Troxel v. Granville*[7] or its application to the facts of this case. In *Troxel*, the Court was faced with an analogous fact pattern. The Granvilles wished to limit visitation by their child's paternal grandparents (the Troxels) to one day per month with no overnight stay, while the Troxels wanted two weekends of overnight visitation per month and two weeks of visitation each summer.[8] The trial court found grandparent visitation to be in the child's best interest, and awarded visitation for one weekend per month, one week during the summer, and four hours on each grandparent's birthday.[9]

The Supreme Court began its analysis by discussing the substantive component of the Fourteenth Amendment's Due Process clause, which provides heightened protection against government interfer-ence with fundamental rights.[10] The Court recognized an established line of cases holding that the right of parents to control the care, custody and upbringing of their children is one of the oldest and most fundamental rights recognized by the constitution.[11]

The Court then analyzed the Washington statute in light of the considerations mandated by the Due Process clause. While many commentators have seized on the language which characterized the Washington statute as "breathtakingly broad,"[12] that criticism by itself does not address the essence of the Court's analysis. Rather, the language central to the Court's reasoning is as follows:

> Once the visitation petition has been filed in court and the matter is placed before a judge, a parent's decision that visitation would not be in the child's best interest is accorded no deference. [Washington's nonparental visitation statute] contains no requirement that a court accord the parent's decision any presumption of validity or any weight whatsoever. Instead, the Washington statute places the best-interest determination solely in the hands of the judge. Should the judge disagree with the parent's estimation of the child's best interests, the judge's view necessarily prevails. Thus, in practical effect, in the State of Washington a court can disre-

7.   530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).

8.   *Id.* at 61, 120 S.Ct. at 2057, 147 L.Ed.2d at 54.

9.   *Id.*

10.   *Id.* at 65, 120 S.Ct. at 2059, 147 L.Ed.2d at 56 (citing *Washington v. Glucksberg*, 521 U.S. 702, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997)); *Reno v. Flores*, 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993).

11.   *Id.* at 65, 120 S.Ct. at 2059, 147 L.Ed.2d at 56–57. *See also, e. g., Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Prince v. Massachusetts* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944); *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923).

12.   *Id.* at 67, 120 S.Ct. at 2060, 147 L.Ed.2d 57.

gard and overturn *any* decision by a fit custodial parent concerning visitation whenever a [grandparent] files a visitation petition, based solely on the judge's determination of the child's best interests. . . .

Turning to the facts of this case, the record reveals that the [trial court's] order was based on precisely the type of mere disagreement we have just described and nothing more. The [court's] order was not founded on any special factors that might justify the State's interference with Granville's fundamental right to make decisions concerning the rearing of her two daughters.[13]

In *Troxel*, as in the case before us, the trial court awarded grandparent visitation over the objection of a fit parent, finding such visitation to be in the best interest of the child. However, the Supreme Court said that this amounted to an unconstitutional application of the Washington non-parental visitation statute because: (1) there is a presumption that fit parents act in the best interests of their children;[14] (2) there is a fundamental right of parents to raise their children as they see fit, which right is protected by the Due Process clause of the Fourteenth Amendment; and (3) the decision by the trial court to award visitation granted no special deference to the decision by the parent to limit visitation. Very simply, the Court said, "the Due Process clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made."[15]

In the instant case, the circuit court engaged in a presumption contrary to the wishes of the parents and granted their decision no deference, resulting in an infringement on Jason and Holly's fundamental right as parents to raise their daughter as they see fit. The result, as in *Troxel*, is an unconstitutional application of Kentucky's grandparent visitation statute.

The question that now faces us is how, upon remand and in future cases, KRS 405.021 may be applied in a constitutionally permissible manner. Justice Lambert's[16] dissent in *King* provides guidance.

The majority opinion and the statute seem to rely on the idea, in addition to the erroneous belief of a fundamental right in the grandparent, that the lives of the grandchild and grandparent are enriched by their association. While such may be true in many cases, while in others it is not, mere improvement in quality of life is not a compelling state interest and is insufficient to justify invasion of constitutional rights. So long as a family satisfies certain minimum standards with respect to the care of its children, the state has no interest in attempting to "make things better."[17]

In discussing how the case should have been decided, Justice Lambert analyzed a case in which a circuit court in a custody proceeding found a mother unfit and concluded that it was in the best interest of the child to award custody to the child's grandmother.[18] In reversing the circuit court, the Supreme Court

---

13. *Id.* at 67–68, 120 S.Ct. at 2060-2061, 147 L.Ed.2d at 58 (original emphasis).

14. *Id.*

15. *Id.* at 73, 120 S.Ct. at 2064, 147 L.Ed.2d at 61.

16. Now, Chief Justice Lambert.

17. *King, supra,* n. 2, at 634 (Lambert, J. dissenting).

18. *Id., citing Davis v. Collinsworth*, Ky., 771 S.W.2d 329 (1989).

reiterated the rule that a finding of unfitness must be by clear and convincing proof and described factors which showed unfitness and that poverty alone was an insufficient basis to deprive the mother of custody. Thus, [the Supreme Court] recognized that a showing of general improvement of the child's life is insufficient to deprive the natural parent of custody. We required a showing of harm to the child by virtue of parental unfitness. There is no reason a similar rule should not be applied in an action for grandparent visitation. Absent a showing of harm to the child, there is no compelling state interest in intervention into the affairs of an autonomous family and any statute which authorizes such intervention violates the parents' liberty interest under the Fourteenth Amendment.[19]

 While the U.S. Supreme Court in *Troxel* declined to address whether a showing of harm to the child was required in all nonparental visitation cases,[20] we hold, based on Kentucky precedent, that grandparent visitation may only be granted over the objection of an otherwise fit custodial parent if it is shown by clear and convincing evidence that harm to the child will result from a deprivation of visitation with the grandparent.[21] To apply KRS 405.021 without a required showing of harm creates precisely the result that was ruled unconstitutional by the U.S. Supreme Court in *Troxel*.

Accordingly, the order awarding Richard and Tammy Scott visitation with their granddaughter is vacated and this case is remanded to Henderson Circuit Court for further proceedings consistent with this opinion. On remand, the circuit court must give presumptive weight to the wishes of the fit parents and require the grandparents to show by clear and convincing evidence that harm to their grandchild will result from a deprivation of the visitation they seek.

Jason and Holly's motion for sanctions is denied.[22]

ALL CONCUR.

---

19. *Id.* at 635.

20. *Troxel, supra*, n. 7, at 61, 120 S,Ct. at 2058, 147 L.Ed.2d at 54.

21. For an explanation of the elevated standard of proof and reasons therefor, *see King, supra*, n. 2, at 634–635 (Lambert, J. dissenting).

22. *See* n. 1.