**Thomas FAIRHURST and Tasha Neill, Appellants**

v.

**Anita MOON, Appellee.**

No. 2013–CA–000061–ME.

Court of Appeals of Kentucky.

Nov. 27, 2013.

Thomas Fairhurst, Paducah, KY, pro se, Tasha Neill, Clinton, KY, pro se, for Appellant.

Jennifer S. Peeler, Paducah, KY, for Appellee.

Before ACREE, Chief Judge; CLAYTON and MAZE, Judges.

*OPINION*

MAZE, Judge.

Thomas Fairhurst (Fairhurst) and Tasha Neill (Neill) appeal from an order of the McCracken Family Court which granted Anita Moon (Moon) grandparent visitation with their three children. Fairhurst and Neill argue that the trial court denied them a fair trial and failed to afford presumptive weight to their parental decisions. We agree that the trial court failed to properly apply the currently-applicable standards for grandparent visitation. Hence, we reverse and remand for a new hearing, findings of fact and order on the merits.

Fairhurst and Neill are the parents of three children: J.F., born August 2000; B.F., born September 2001; and M.F., born October 2003. Fairhurst and Neil were divorced in 2010. Pursuant to their dissolution decree, they share joint custody of the children with Fairhurst designated as the primary residential parent.

Anita Moon is Neill's mother and grandmother of the three children. Prior to the divorce, the children had regular contact with Moon. Following the divorce, Fairhurst allowed the children to have unrestricted contact with Moon. Over time, however, Fairhurst started raising objections to the amount of time that Moon was spending with the children and to Moon's behavior around the children. Fairhurst complained that Moon was interfering with his parenting decisions regarding the children. He also alleged that Moon's behavior was causing mental distress for the children by showing favoritism, encouraging the children to keep secrets, making

unfavorable comments about their parents, and imposing her own religious views on the children. Neill also had complaints about Moon's behavior around and relationship with the children.

Beginning in February of 2012, Neill stopped allowing the children to have telephone contact with Moon while they were with her. Shortly thereafter, Fairhurst also began limiting the children's contact with Moon. After several additional incidents occurring at the children's school, Fairhurst restricted Moon's contact further. In response, Anita Moon and her husband, Pledger Moon, filed this petition on May 16, 2012, seeking a court order for grandparent visitation.

Since Pledger Moon is not a biological grandparent to the children, the trial court dismissed him as a party due to lack of standing. The trial court also appointed a Guardian *Ad Litem* (GAL) for the children. After interviewing the parties and the children, the GAL submitted a report to the court. However, the GAL declined to make a recommendation on visitation until after the hearing.

The trial court conducted a hearing on Moon's motion for grandparent visitation on November 29 and 30, 2012. On the second day of the hearing, the trial court interrupted Fairhurst's testimony and announced that no further proof was necessary. Pointing to Fairhurst's testimony that he had never completely denied visitation to Moon, the trial court concluded that it had the authority to grant grandparent visitation based only on a finding that such visitation would be in the best interests of the children. After discussion with the GAL and the parties, the trial court granted Moon one-on-one visitation with each child for a period of 24 hours each month and additionally as agreed by the parties. The order further provided that the children are allowed to call, e-mail and write

Moon, and that Moon shall be able to eat lunch with each child one time per month if such is permitted by the child's school.

Fairhurst and Neill now appeal from this order. While Moon's petition was pending, the Kentucky Supreme Court rendered its decision in *Walker v. Blair*, 382 S.W.3d 862 (Ky.2012). In that case, the Kentucky Supreme Court addressed the scope of grandparent visitation in light of the ruling by the United States Supreme Court in *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). The parties and the GAL addressed the application of *Walker* to the facts of this case prior to the hearing. However, the opinion had just become final at the time of the hearing. The proper application of *Walker* is the controlling issue in this appeal.

The Court in *Walker* began with the statutory authority for grandparent visitation, which did not exist at common law. KRS 405.021(1) permits a circuit court to grant visitation to maternal or paternal grandparents of a child and to issue any necessary orders to enforce the decree if it determines that it is in the best interest of the child to do so. Prior to *Troxel*, this statute was interpreted to establish a presumption that visitation with a grandparent will generally be in the best interests of the child. *King v. King*, 828 S.W.2d 630, 632 (Ky.1992). Consequently, a parent's objection to grandparent visitation, standing alone, would not be sufficient to deny visitation to a grandparent. *Id.* at 632–633.

The continued viability of this rule was called into question after the United States Supreme Court rendered its decision in *Troxel v. Granville, supra.* In that case, the Court considered the constitutionality of a Washington-state statute which authorized trial courts to grant third-party visitation rights whenever visitation may

serve the best interest of the child. A plurality of the United States Supreme Court found that the statute unconstitutionally interfered with parents' fundamental right to raise their children. *Troxel,* 530 U.S. at 65–66, 120 S.Ct. 2054. A majority of the Court agreed that parents have a fundamental liberty interest in the care, custody, and control of their children, that "there is a presumption that fit parents act in the best interests of their children." *Id.* at 68, 120 S.Ct. 2054.

However, the Court in *Troxel* did not reach a consensus regarding the precise scope of this right beyond the specific statute at issue and the particular circumstances of the case before it. As a result, this Court subsequently was faced with interpreting KRS 405.021(1) in light of the federal constitutional rights delineated in *Troxel.* In *Vibbert v. Vibbert,* 144 S.W.3d 292 (Ky.App.2004), this Court, sitting *en banc,* acknowledged *Troxel's* requirement that a fit parent's decisions regarding third-party visitation must be presumed to be in the child's best interests. *Id.* at 294. However, the Court held that a grandparent is not required to show that a denial of visitation will cause actual harm to the child. *Id. overruling Scott v. Scott,* 80 S.W.3d 447 (Ky.App.2002).

Rather, the Court in *Vibbert* adopted a modified best-interest standard which starts with the presumption that visitation against the parent's wishes is not in the child's best interest. The grandparent must rebut this presumption with clear and convincing evidence that visitation is in the child's best interest. *Id.* at 294–295. In determining whether the visitation is in the child's best interest, a trial court must consider a broad array of factors, including but not limited to: the nature and stability of the relationship between the child and the grandparent seeking visitation; the amount of time spent together; the poten-

tial detriments and benefits to the child from granting visitation; the effect granting visitation would have on the child's relationship with the parents; the physical and emotional health of all the adults involved, parents and grandparents alike; the stability of the child's living and schooling arrangements; and the wishes and preferences of the child. *Id.* at 295.

Despite this Court's ruling in *Vibbert,* confusion remained about the application of the presumption in favor of the parent's decisions and the modified best-interests standard. These issues were further confused because *King* was never explicitly overruled. As a result, the statute was still read by some as favoring grandparent visitation. The issue was finally placed squarely before the Kentucky Supreme Court in *Walker.* After examining the development of standards from *King* through *Troxel* and *Vibbert,* the Kentucky Supreme Court in *Walker* explicitly recognized that the approach set out in *King* was no longer valid. *Walker,* 382 S.W.3d at 868–870. As the Court in *Walker* explained,

[s]o long as a parent is fit, there will normally be no reason for the state to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children. So a fit parent's wishes are not just a factor to consider in determining what is in the child's best interest. The constitutional presumption that a fit parent acts in the child's best interest is the starting point for a trial court's analysis under KRS 405.021(1).

*Id.* at 870–871, (footnotes and internal quotations omitted)

In the current case, the trial court took the position that, since Fairhurst had never completely denied visitation between the children and Moon, it had

the authority to enter a visitation order based solely upon a finding of the best interests of the children. But given the contrary discussion in *Walker*, we find that the trial court clearly erred in finding that Fairhurst could not object to entry of a visitation order merely because he never entirely denied visitation to Moon. Rather, the trial court must presume that Fairhurst and Neill have the right to impose any limitations on a grandparent's visitation with the children.

Since Moon filed this action seeking greater contact with the children, she clearly believes that the limitations imposed by Fairhurst and Neill are not in the best interests of the children. Indeed, the parties agree that there has been a denial of visitation to the extent desired by Moon. If that were not the case, there would be no actual case-in-controversy. Therefore, Moon retains the burden of proving that court-ordered visitation would be in the best interests of the children.

 And considering that Moon had the burden of proof on this issue, the trial court also erred by cutting off Fairhurst's testimony and further presentation of evidence. Although we appreciate the trial court's frustration with the length of the testimony presented, it was simply inappropriate for the court to refuse to hear more evidence and to characterize the parents' objections as "crap."[1] The trial court effectively reversed the burden of proof and substituted its judgment for that of the parents. The trial court's approach in this matter fundamentally conflicts with the standard established in *Walker* and compels reversal.

 The Court in *Walker* went on to approve of the modified best-interests standard and factors set out in *Vibbert*.

*Id.* at 871. The Court emphasized that the focus of these factors is not whether the parent is fit to make a decision regarding third-party visitation. A grandparent seeking visitation over the objections of the parent is not required to show that the parent is unfit, but must present clear and convincing evidence that the parent is mistaken in the belief that visitation would not be in the best interests of the child. *Id.* at 871–872.

 Of course, the trial court retains broad discretion regarding the order and admission of evidence. *See* Kentucky Rules of Evidence (KRE) 403 and 611. However, the trial court can only make the determinations required by *Walker* after all parties have a reasonable opportunity to present proof and with due regard to the assignment of the burden of proof. Under the circumstances, this matter must be remanded to the trial court to allow the parties a reasonable opportunity to complete the proof in this matter. Once all proof is submitted, the trial court may determine whether Moon has met her burden of proof that her visitation with the children would be in the best interests of the children as set forth in *Walker* and *Vibbert*.

Accordingly, the order of the McCracken Family Court is reversed and this matter is remanded for additional proceedings as set forth in this opinion.

ALL CONCUR.

---

1. VR 11–30–2012, 2:41:10.