v.

**CABINET FOR HEALTH AND FAMILY SERVICES; C. D.; R. D.; and C. R. O., Appellees**

and

C. O.[1], Appellant

v.

**Cabinet for Health and Family Services; C. D.; R. D.; and K. C. O., Appellees**

NO. 2016-CA-000465-ME, NO. 2016-CA-000481-ME

Court of Appeals of Kentucky.

APRIL 7, 2017; 10:00 A.M.

---

1. C.R.O. and C.O. are the same person. They were simply listed differently in the two notices of appeal filed. We have chosen to refer to C.O. as he identified himself in his notice of appeal.

BRIEFS FOR APPELLANT K. C. O.: Joy D. Denton, Bowling Green, Kentucky.

BRIEFS FOR APPELLANT C. O.: Steve O. Thornton, Bowling Green, Kentucky.

BRIEF FOR APPELLEE, CABINET FOR HEALTH AND FAMILY SERVICES: Leslie Bucklew, Assistant Warren County Attorney, Bowling Green, Kentucky.

BRIEF FOR APPELLEES, C. D. AND R. D.: Trevor W. Webb, Bowling Green, Kentucky.

BEFORE: COMBS, DIXON, AND NICKELL, JUDGES.

## OPINION

NICKELL, JUDGE:

Biological parents, K.C.O. (mother) and C.O. (father), challenge the Warren Circuit Court's award of grandparent visitation to R.D. and C.D. (paternal grandparents) in an informal adjustment order entered in a juvenile dependency, neglect and abuse (DNA) proceeding in November 2015. Parents also challenge the court's March 2016 denial of motions to alter, vacate or amend the award and motions to terminate the award. Upon review of the record, the briefs, and the law, we affirm in part, vacate in part and remand for entry of an order consistent with this Opinion.

By statute, an award of grandparent visitation begins with a grandparent petitioning for visitation under KRS[2] 405.021(1) and demonstrating visitation will be in the child's best interest by clear and convincing evidence. This is *not* such a case. The paternal grandparents never requested visitation; the trial court, *sua sponte*, granted it even though the paternal grandparents had not filed a petition seeking visitation, were not parties to the DNA case, and had not moved to intervene in the DNA case. Curiously, the maternal grandparents (K.C. and B.C.), and the maternal great-grandparents (D.B. and B.B.),[3] all of whom had moved to intervene, were *not* granted visitation.

> Visitation is not solely for the benefit of the adult visitor but is aimed at fulfilling what many conceive to be a vital, or at least a wholesome contribution to the child's emotional well-being by permitting partial continuation of an earlier established close relationship." *Looper v. McManus*, Okla.App., 581 P.2d 487, 488 (1978).

*Simpson v. Simpson*, 586 S.W.2d 33 (Ky. 1979) (*abrogated by statute, as noted in B.F. v. T.D.*, 194 S.W.3d 310 (Ky. 2006)).

According to the DNA petition filed by the paternal grandparents, their three-year-old grandson was living with his parents in a home rife with domestic violence and regular intravenous methamphetamine use. On August 7, 2015, mother telephoned the paternal grandparents saying she and their child's father had been involved in a

---

**2.** Kentucky Revised Statutes.

**3.** As an aside, only a "child's four grandparents" may petition for visitation; it does not extend to great-grandparents. *Cole v. Thomas*, 735 S.W.2d 333, 334-35 (Ky. App. 1987). Until the age of two, the child lived with his parents in the home of the maternal great-grandparents, during which time he developed a strong bond with his maternal grandparents and with the maternal great-grandparents.

domestic violence episode in their son's presence. The paternal grandparents suspected parents were using drugs—something mother admitted had been occurring since father's release from drug court several months earlier—prompting the paternal grandparents to take mother and child into their home.

On August 13, 2015, the parents allowed the paternal grandparents to take the child to an out-of-state wedding. Upon their return, the paternal grandparents asked to keep the child while the parents addressed their drug issues. According to the petition, the parents responded by threatening to cause bodily harm to the paternal grandparents and burn their home; the parents collected the child and refused to allow the paternal grandparents to see him. In response, some eighteen days after this episode began, the paternal grandparents filed a juvenile DNA petition—supported by affidavit—in the family court division of the Warren Circuit Court, resulting in removal of child from both mother and father.

At the temporary removal hearing [4] that followed, no sworn testimony was heard, but there was reference to rancor and discord between the paternal grandparents and their son, the child's father. When a civil, but passionate, battle for the child erupted between the maternal and paternal sides of the family, the trial court stated emphatically it was not conducting a custody hearing and encouraged everyone to "get real amicable real fast if you want this child to stay out of foster care." At the time of this hearing, CHFS had visited only the paternal grandparent's home, where the social worker met the child whom she described as well-adjusted.

Troubled by internal squabbles between the in-laws, but glad to see relatives were willing to take the child, the court warned that family conflict had to be reduced. The court also expressed suspicion that all the grandparents knew more about the parents' activities than they were revealing. The court maintained the *status quo*, giving both sets of grandparents equal visitation with the child at the discretion of CHFS. Visitation by the parents was to be supervised.

By October 16, 2015, CHFS had completed home evaluations of the maternal great-grandparents, the maternal grandparents, and the paternal grandparents, deeming all to be appropriate placements. Of the three options, the social worker recommended placement with the maternal grandparents because the child "has a strong bond" with them and they are "very supportive of [the parents] in their recovery and progress." The maternal great-grandparents were willing to take the child, but favored placement with the maternal grandparents due to the child's "strong bond" with them and the fact that other children were in the maternal grandparents' home. The social worker did not recommend placement with the paternal grandparents "because there is another home that is better suited for placement of the [child] at this time due to family tension. [The social worker] came to this conclusion after learning of the existing ongoing conflicts between [paternal grandmother and her son]."

In a report filed the same day, CHFS stated the paternal and maternal grandparents had negotiated a visitation plan allowing all four grandparents to see the child. In an adjudication report filed about

4. On the order entered September 3, 2015, documenting the temporary removal hearing, the court checked the box stating, "[a]ny parent, guardian or person(s) exercising custodi- al control or supervision of the child shall cooperate and actively participate in treatment or a social service program. (KRS 610.160)."

two weeks later, CHFS noted: Paternal grandmother had procured emergency protective orders (EPO) against both mother and father; mother denied domestic violence occurred in the home; and, on August 28, 2015, mother and father negotiated and signed a prevention plan agreeing not to use illegal substances while caring for their son and to follow all court orders and community partner recommendations. CHFS recommended the child be returned to mother's custody with a safety plan.

An adjudication hearing occurred November 5, 2015. Father stipulated a pattern of drug abuse—the only finding of fact made by the trial court. The court apprised the families a failure to report would probably result in that person no longer seeing the child and enabling poor choices by the parents was not in the child's best interests. The court then accepted father's stipulation to neglect and returned the child to mother's custody, she having passed a hair follicle test. The written order read in pertinent part:

> father shall not reside in the home of mother or child at this time; father remains subject to random drug testing at request of CHFS; father shall comply with CHFS case plan, recommendations of ABC Counseling, attend NA/AA, and complete domestic violence counseling; *child shall be entitled to visitation with paternal grandparents to be facilitated by CHFS*; ABC Counseling to report any noncompliance of father.

[Emphasis added]. The order for visitation surprised those in attendance because no one had requested grandparent visitation; no petition had been filed; and no proof had been heard to establish the child's best interest.

Shortly thereafter, without stating grounds, mother and father both filed written motions to alter, amend or vacate that portion of the order allowing visitation with the paternal grandparents. A month later, mother and father both moved to terminate the paternal grandparents' visitation because: they lack standing; they are not parties; they did not request visitation (no grandparent did); KRS 405.021(1) was not followed; and, it is not a function of CHFS to facilitate grandparent visitation when custody of a child has been returned to his parent. On December 30, 2015, CHFS submitted a case report to the court noting paternal grandmother was continuously contacting her son, despite having procured a domestic violence order (DVO) against him. The report also detailed the extreme lengths to which CHFS was going to facilitate visitation with paternal grandmother due to incompatible schedules.

The next CHFS report, dated February 24, 2016, indicated mother had completed aftercare treatment and was receiving individual therapy. Both mother and father were receiving necessary services and "appear to be doing well with co-parenting the child on weekends." Two visits with the paternal grandparents had occurred since early January; both took CHFS considerable time to arrange. The report did not recommend whether visitation with the paternal grandparents should continue.

The motions to alter, amend or vacate and terminate visitation were heard March 2, 2016. Father's counsel argued: KRS 405.021(1) requires a grandparent seeking visitation to file a petition in circuit court, not in juvenile court; the maternal and paternal grandparents have a highly adversarial relationship and did not discuss grandparent visitation; no grandparent petitioned for visitation and none had shown visitation with them was in the child's best interest; and, allowing visitation to continue risked unraveling all the progress mother and father had made in getting

their lives on track for the benefit of their son.

Mother's counsel argued the paternal grandparents had six months to petition the court for visitation and prove the merit of their claim—but had done neither. Paternal grandmother knows how to acquire visitation, having petitioned for it years ago before dismissing the petition. By proceeding now, in a juvenile case, she is attempting to circumvent the statutory process. Paternal grandmother has a DVO against her son, and requiring CHFS to arrange visitation for her has strained CHFS resources.

The county attorney argued the paternal grandparents were entitled to visitation, and characterized the parents' argument as flawed because it was based on KRS Chapter 400 rather than Chapter 600 which pertains to juveniles. Without citing any case law in support, he urged the court to broadly construe KRS 610.160 to allow it to enter an order it could not enter in a civil case. He then argued the parents were seeking to vacate only one portion of a multifaceted order, when, in his view, if one aspect of the order was vacated, the entirety of the document had to be vacated.

Counsel for the paternal grandparents admitted visitation had been a nightmare, but believed the court had ordered visitation as a prophylactic measure—fearing the maternal grandparents and maternal great-grandparents would not report a drug relapse by the parents.[5] He also suggested animosity between the families stemmed from the paternal grandparents filing the juvenile DNA petition due to parental drug abuse.

■ Without swearing any witnesses or hearing any proof, the court acknowledged the family animosity, but stated filing the juvenile petition had benefitted the child and his parents. The court then stated, [b]ut I haven't seen anybody thinking too much from the child's point of view, at all. *And so that's one reason that it was put in place because I do think that the child would benefit from having contact with all of [his] family, because if anything ever happened to anybody, God forbid that that would happen, but the more family members that [he] has to be or he has to support that child the better, to be there for that child.* And I think it's important to have a lot of family contacts—to not be isolated. And so, I do agree that the Cabinet, it shouldn't be so difficult for the Cabinet, but I don't blame the Cabinet for that, that's for sure. And so, at this point, I'm going to leave the visitation in place, but it's only going to be once per month. [Emphasis added]. It is against this backdrop that we analyze whether a trial court may *sua sponte* award grandparent visitation in a juvenile DNA proceeding. For the reasons set out below, we answer this question in the negative.

■ First, at stake in this case is "the fundamental right of parents to raise their children as they see fit without undue interference from the state[.]" *Vibbert v. Vibbert*, 144 S.W.3d 292, 295 (Ky. App. 2004). In such cases, it is presumed a parent who is fit acts in his or her child's best interest. *Troxel v. Granville*, 530 U.S. 57, 69–70, 120 S.Ct. 2054, 2062, 147 L.Ed.2d 49 (2000); *Walker v. Blair*, 382 S.W.3d 862, 866 (Ky. 2012). Here, the trial court never found mother nor father to be

---

5. During the previous adjudication hearing, when the trial court asked for her opinion on family members reporting infractions, the social worker said she had never seen a family so unified and working to protect a child. She believed members of the maternal family would report any infraction.

unfit. Therefore, the trial court had to presume them to act in their son's behalf when they opposed placement of the child with the paternal grandparents and the *sua sponte* award of grandparent visitation to the paternal grandparents. Mother had sought placement with her parents, the maternal grandparents. At three separate hearings, the trial court acknowledged the existence of family friction, but it was never explored.

■ "A grandparent petitioning for child visitation contrary to the wishes of the child's parent can overcome this presumption of validity only with clear and convincing evidence that granting visitation to the grandparent is in the child's best interest." *Walker*, at 866. To determine whether grandparent visitation is in the child's best interest under KRS 405.021, the trial court must:

> consider a broad array of factors ..., including but not limited to: the nature and stability of the relationship between the child and the grandparent seeking visitation; the amount of time spent together; the potential detriments and benefits to the child from granting visitation; *the effect granting visitation would have on the child's relationship with the parents*; the physical and emotional health of all the adults involved, parents and grandparents alike; the stability of the child's living and schooling arrangements; the wishes and preferences of the child. The grandparent seeking visitation must prove, by clear and convincing evidence, that the requested visitation is in the best interest of the child. We retain this standard of proof from *Scott* [*v. Scott*, 80 S.W.3d 447 (Ky. App. 2002) ], noting that the Supreme Court has mandated its use when "the individual interests at stake in a state proceeding are both particularly

important and more substantial than mere loss of money."

[Emphasis added]. *Vibbert*, 144 S.W.3d at 295 (quoting *Santosky v. Kramer*, 455 U.S. 745, 756, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (citation omitted)). The paternal grandparents offered no proof. Therefore, they proved nothing by clear and convincing evidence, and specifically did not prove visitation with them was in the child's best interest. Having no proof before it, the court could not, and did not, consider the factors identified in *Vibbert*.

■ Second,

> [v]isitation, set by a court, is a limitation on exclusive custody awarded to a party. *Phillips v. Horlander*, Ky., 535 S.W.2d 72 (1975). It is apparent, from reading the statutes dealing with the care and custody of children that the legislature has sought to limit the right of visitation to *only those involved in a "jurisdictionally sound" custody proceeding* when it is in the best interest of the child to do so, *Simpson v. Simpson*, Ky., 586 S.W.2d 33 (1979), and to a child's grandparents under KRS 405.021. It was only in 1984 that the legislature decided to extend the right of grandparents to petition for visitation when the parent or parents of the child are not deceased. Clearly, a review of these statutes represents the legislature's desire to leave for the most part the total custody, care and upbringing of a child in the hands of the custodial parent. *In other words, the legislature determined that the parents are entitled to decide who their child shall visit and who they shall not.* Only grandparents have been given the right, outside a custody proceeding, to request visitation.

[Emphasis added]. *Cole*, 735 S.W.2d at 334. This was not a custody proceeding and no one has demonstrated a juvenile DNA proceeding is a " 'jurisdictionally sound' custo-

dy proceeding[.]" *Id.* Additionally, the paternal grandparents never characterized themselves as *de facto* custodians in an attempt to invoke jurisdiction under KRS 403.270. That leads us to question whether and how the trial court had jurisdiction over the paternal grandparents in particular and authority to grant visitation generally. The trial court failed to explain this basic point.

 Moreover, as noted in *Vibbert*, the effect awarding grandparent visitation will have on the child's relationship with his parents is one factor the court must consider in assessing the child's best interest. "This is especially true if animosity exists between the parent and grandparent. Grandparent visitation should not be granted if it is clearly detrimental to the parent-child relationship." *Walker*, 382 S.W.3d at 872. Everyone acknowledged the tension between paternal grandmother and her son, including the trial court, but there is no explanation of the impact visitation with the paternal grandparents will have on the parent-child relationship. Here, the trial court convened hearings, but heard no proof of the child's best interest, and made no findings on that point. Under *Robison v. Theele*, 461 S.W.3d 772, 778 (Ky. App. 2015), an award of grandparent visitation when "the record is wholly devoid of requisite findings," cannot stand.

 Third, KRS 405.021 authorizes a circuit court to grant grandparent visitation upon clear and convincing proof— mustered by the grandparent—that visitation is in the child's best interest. We have uncovered no valid case [6] explicitly requiring an evidentiary hearing at which witnesses are subject to cross-examination and after which a judge enters findings of fact and conclusions of law determining the child's best interest will be served by granting visitation, but that appears to be the only reasonable way a grandparent may meet his statutory burden. Thus, we believe an evidentiary hearing is implied. Reliance on affidavits or other written proof alone would be untenable when determining a matter of paramount importance—a fit parent's fundamental right to rear his child as he chooses.

 Fourth, the county attorney's theory that KRS 610.160 may be read to permit a trial court to require a grandparent to participate in visitation as a form of "treatment" or "social service program" is just too great a leap for this Court to make. This is true, especially when there has been no showing visitation with these particular grandparents "is in the best interest of the child and family unity." There was not even the slightest hint the child liked, was comfortable with, or respected the paternal grandparents. We do not know whether the trial court applied this theory or not, but we will not breathe life into it.

 Finally, while not mentioned by either party, whether a trial court may *sua sponte* award grandparent visitation was laid to rest nearly a decade ago in *VanWinkle v. Petry*, 217 S.W.3d 252 (Ky. App. 2007). There, a trial court—of its own volition—granted an additional week of visitation to a grandmother who had been allowed to intervene in a lengthy custody battle. That portion of the order extending visitation was vacated because:

> [i]f a grandparent wishes to have visitation with a grandchild, he or she must petition the circuit court in the county in which the child resides and must prove by clear and convincing evidence that

---

**6.** Both *King v. King*, 828 S.W.2d 630, 632 (Ky. 1992) *overruled by Troxel as explained in Walker*, 382 S.W.3d at 870, and *Mustaine v.* *Kennedy*, 971 S.W.2d 830, 832 (Ky. App. 1998) (quoting *King*) previously held the need for a hearing was implied.

visitation is in the child's best interest. Furthermore, in analyzing the issue of the child's best interest, the circuit court should consider the factors set forth in *Vibbert*. In this case, the Petrys did not petition the family court for additional visitation; did not raise the issue of additional visitation at the December 5th hearing; and did not present any evidence that additional visitation would be in the children's best interest. In addition, the family court made no finding, pursuant to KRS 405.021, either from the bench or in a written order, that additional visitation would be in the children's best interest, nor did it consider the factors set forth in *Vibbert*. We find that the family court erred when it granted the additional visitation without following the required procedures. Thus, we vacate that part of the December 5, 2005 order that granted additional visitation. However, this ruling does not preclude the family court from granting additional visitation to the Petrys in the future if the mandates of KRS 405.021 and *Vibbert* are followed.

*Id.*, at 258. The similarities in *VanWinkle* and this case are striking. If it was error for the judge in *VanWinkle* to simply extend visitation without following the statutory protocol, it was certainly error for the judge in this case to grant visitation out of the blue.

If the trial court believed the paternal grandparents were the best candidates to serve as eyes and ears for the court and report a relapse into drug abuse by either or both of the parents—something we gleaned from viewing the hearings—ordering grandparent visitation was an inappropriate vehicle to accomplish the desired goal and clear error. *Walker*, 382 S.W.3d at 868. For the same reasons expressed in *VanWinkle*, we now affirm in part; vacate that part of the Warren Circuit Court orders entered November 6, 2015, and

March 2, 2016, granting paternal grandparent visitation; and remand for entry of an order consistent with this Opinion.

COMBS, JUDGE, CONCURS.

DIXON, JUDGE, CONCURS IN RESULT ONLY.

