RENDERED:  OCTOBER 7, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1245-MR

CHELSIE SIZEMORE                                                                 APPELLANT

v.

APPEAL FROM GREENUP CIRCUIT COURT
HONORABLE JEFFREY L. PRESTON, JUDGE
ACTION NO. 19-CI-00397

BECKIE BROWN                                                                        APPELLEE

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; COMBS AND JONES, JUDGES.

JONES, JUDGE:  The Appellant, Chelsie Sizemore, is the mother of five minor

children.  She requests review of an order rendered by the family court division of

the Greenup Circuit Court (family court) awarding her mother, Beckie Brown, the

Appellee, visitation with all five children.  Having reviewed the record and being

otherwise sufficiently advised, we vacate the order as to all five children and

remand for further proceedings as described below.

## I. BACKGROUND

Chelsie Sizemore (Mother) is the biological mother of five minor children: A.S. (born 2008); H.S. (born 2010); P.S. (born 2014); R.S. (born 2015); and S.M. (born sometime after August 2019).[1] Beckie Brown (Grandmother) is the children's maternal grandmother. Gregory Sizemore is the biological father of the four older children. Mr. Sizemore has not seen the children in several years and his current whereabouts are unknown. Andrew Meadows, Mother's current husband, is S.M.'s father.[2]

This action began on September 25, 2019, prior to S.M.'s birth, when Grandmother filed a petition seeking visitation with the four older children. (Record (R.) at 2.) The petition listed the four children by name and birthdate. Mother and Mr. Sizemore were identified as the children's biological parents and named as respondents. Despite being named as a party respondent, Mr. Sizemore did not file a response or enter an appearance in this matter. Mr. Meadows was not named in the petition.

---

[1] The record does not reflect the exact date of S.M.'s birth, but we are able to infer that the infant was born sometime after September 25, 2019, the date of Grandmother's petition which specifically named the four older children.

[2] Grandmother argues that Mother failed to prove Mr. Meadows's paternity. However, based on the record, it appears that Mother was married to Mr. Meadows at the time of S.M.'s birth, a fact of which Grandmother was aware. "A child born during lawful wedlock, or within ten (10) months thereafter, is presumed to be the child of the husband and wife." Kentucky Revised Statutes (KRS) 406.011.

Grandmother alleged that she was previously granted temporary custody of the four children as part of dependency, neglect, and abuse (DNA) actions, which were adjudicated by the Greenup family court.[3]  Pursuant to orders entered in the DNA cases, the four children were placed in Grandmother's temporary custody from February 25, 2019, to July 8, 2019.

According to Grandmother, Mother began refusing to allow her to have contact with the children shortly after regaining custody in July 2019. Grandmother alleged that her sudden removal from the older children's lives was detrimental to them, especially since they had lived with her fulltime for over four months.  Grandmother maintained that she had never caused any harm to the children and had always acted in their best interests.  She requested the family court to grant her reasonable visitation with the four children.

Acting without the assistance of counsel, Mother filed a written response on October 25, 2019.[4]  Therein, Mother stated that she objected to

---

[3]  A separate DNA action was opened for each of the four older children:  Action Nos. 19-J-00023, 19-J-00024, 19-J-00025, and 19-J-00026.  Although the parties and the family court repeatedly referred to the DNA actions throughout these proceedings, the record on appeal does not encompass the filings from those actions.  Our description of the juvenile cases is based on statements by the parties and the family court and the limited information available on CourtNet. As the parties appear to agree on the substance of what occurred as part of the DNA proceedings, our review has not been materially impacted by the omission of the DNA records.

[4]  Although Mother filed her response without the assistance of counsel, Mother retained counsel at some point prior to the hearing.

Grandmother's request for visitation "due to the fact that [Grandmother] and [Mother] have had a strained and toxic relationship documented and dated as far back as 2006, years prior to the birth of [the children]." (R. at 6.) Mother further averred that Grandmother's behavior caused Mother to suffer emotional trauma, and she feared allowing Grandmother to have visitation with the children would subject them to the same kind of trauma Mother endured during her own childhood.[5]

Mother also alleged Grandmother made false reports and claims to the Cabinet for Health and Family Services (the Cabinet) regarding Mother's care of the four children. Mother explained that Grandmother interrogated the children about Mother's care, leading the two older children to cease communication with Grandmother of their own accord after returning to Mother's care. Mother averred that the children were excelling academically, emotionally, and behaviorally since having been returned to her. She believed allowing Grandmother to see the children would negatively impact their progress. Mother denied that Grandmother was acting in the children's best interests. Rather, Mother alleged that

---

[5] Mother's response referenced Scott Circuit Court Action No. 06-CI-00318, the divorce action between Grandmother and Mother's father. Mother attached various records from that action to her response. The attached records discuss timesharing and custody of Mother during the time she was a minor. During the final hearing, the family court remarked that these events were mostly collateral. We agree, as it is undisputed that Mother and Grandmother have not had a good relationship for many years due primarily to events that occurred during Mother's childhood.

Grandmother was motivated by vindictiveness and a desire to control and monitor Mother.

On October 29, 2019, Grandmother filed a "verified motion for immediate temporary grandparent visitation and for permanent visitation."[6] This motion largely parroted the language within Grandmother's petition. It listed the four older children, noted that Grandmother had prior temporary custody of them, and that she wanted to remain "a constant, stable person in their lives." (R. at 13-14.) The motion makes no mention of either the actual or impending birth of a fifth child, and gives no indication that Grandmother intended to expand her request to include visitation with the fifth child.[7]

The family court conducted a hearing on August 5, 2020. Grandmother and her twin sister, Kristie Floyd, testified in support of visitation. In opposition, Mother testified on her own behalf and presented the testimony of April Ruggles, a Cabinet supervisor.

---

[6] The family court never ruled on Grandmother's request for temporary visitation. This is of no consequence to our review because the order granting Grandmother permanent visitation mooted the temporary visitation request.

[7] It is unclear if S.M. was born at the time Grandmother filed her motion; however, based on an affidavit filed of record, it appears that Grandmother knew Mother was at least pregnant at this time. "Grandmother continued to rant about how [Mother], and husband, [Mr. Meadows], would mess up again and she would get custody of all five children, including [the affiant's] grandbaby which has not yet been born and that she has the money to do it." (R. at 42.)

Grandmother, the first witness, testified that she had always had a close relationship with the four older children. She saw them often and kept them on some holidays and during parts of the summer. She received temporary custody of the four older children in February 2019 as part of DNA proceedings arising out of Mother's and Mr. Meadows's substance abuse issues. After Grandmother received temporary custody, the four older children moved into her home in Georgetown, Kentucky. Grandmother explained that she never intended to seek permanent custody of the children and presented the situation to them as an adventure that would last until Mother and Mr. Meadows were better.

Grandmother testified that the older children returned to Mother's care in July 2019, and soon thereafter Mother cut off all contact with Grandmother. Grandmother had not seen the children for over a year. Grandmother explained that because of Mother's past drug use, she becomes concerned when she is unable to see the children. Grandmother believes that Mother is objecting to visitation because she is afraid that Grandmother will report her to Cabinet.

On cross-examination, Grandmother acknowledged previously informally reporting Mother to the Cabinet. She denied that she ever intentionally made any false reports to the Cabinet. She acknowledged making an inappropriate comment to one of the children about the child's new haircut and expressed remorse for having done so. She also acknowledged that, on one occasion during

-6-

the time she had the children, she asked the Cabinet to remove them. She explained that this resulted from communication problems with the Cabinet, and that after thinking about the matter overnight, she decided that she would work through those issues because it was what was best for the children.

The next witness was Kristie Floyd, Grandmother's twin sister. Ms. Floyd testified that she is close to Grandmother and spent a lot of time with the four older children prior their return to Mother's care in July 2019. Ms. Floyd said that it would greatly shock her if the children did not want to see Grandmother again; however, she acknowledged that she had not spoken to them for over a year so she could not say for certain how they currently felt about Grandmother. Ms. Floyd believes a relationship with Grandmother provides the children with much needed structure. Ms. Floyd denied ever having witnessed Grandmother acting inappropriately toward the children or speaking negatively about Mother in front of them.

Mother's first witness was April Ruggles, a Cabinet supervisor. Ms. Ruggles supervised the family's caseworker during which time she had frequent contact with Mother and Grandmother. Ms. Ruggles testified that Grandmother raised several concerns about Mother's care of the children during the time they were living with Grandmother and visiting Mother. Ms. Ruggles explained that these were not formal reports but rather expressed as concerns. Ms. Ruggles

testified that in her opinion Mother and Grandmother have a problematic relationship dating back to when Mother was a child making it difficult for them to communicate and get along with one another.

Mother was the last witness to testify. Mother downplayed Grandmother's previous involvement with the children describing it as sporadic. According to Mother, while she allowed Grandmother to see the children prior to July 2019, she tried to limit the contact as much as possible. She explained this was necessary because she cannot get along with Grandmother, and it causes stress for the whole family when Grandmother is excessively involved. She admitted that she previously had a substance abuse problem, which led to Grandmother's receiving temporary custody.

Mother testified that while she and Grandmother had not had a good relationship for many years, their acrimony intensified while Grandmother had temporary custody of the children due, in part, to Grandmother's repeatedly reporting Mother to the Cabinet. Mother believes Grandmother will continue to make exaggerated and false reports if she is allowed visitation with the children.

Mother testified that the two older children have their own cellular telephones and that the initial decision not to respond to Grandmother's calls and texts was theirs. Mother does not believe in-person visitation with the children is in their best interests; however, she is not necessarily opposed to phone calls.

By its order entered on August 17, 2020, the family court granted

Grandmother's petition for visitation. The order provides:

> The COURT FINDS that it is in the best interest of the children to order that [Grandmother] be given specific times with the five children involved in this case. The COURT SPECIFICALLY FINDS that by statute [Grandmother] has standing to request visitation because this Court had placed custody with her previously in the juvenile action. The COURT FINDS that [Grandmother] has been very much involved with the four oldest children and sporadically involved with the youngest child. It appears to the Court that the only reason that [Mother] does not want [Grandmother] to visit with the children is that she is afraid that somehow that [Grandmother] will discover that [Mother] has done something which would necessitate a contact with the Cabinet for Health and Family Services.
>
> Therefore, it is the ORDER of this Court that [Grandmother] shall have visitation with all five children involved. The COURT FINDS that specifically it would be in the best interest of the children to continue their relationship with their grandmother. The COURT ORDERS that [Grandmother] shall have time with the children according to Schedule A of the Greenup County Visitation Guidelines. The Court recognizes that this may be a little more grandparent visitation than is normally granted, but the Court has already noted that [Grandmother] was granted custody of these children previously. The COURT FINDS that it would be in the best interest of the children to continue that increased involvement by [Grandmother].

(R. at 71.)

On August 27, 2020, Mother filed a motion to alter, amend, or vacate the family court's order. Therein, Mother argued that the youngest child, S.M., was born after Grandmother filed her petition seeking visitation making the best interest analysis different since Grandmother had never had custody of S.M. Mother also pointed out that Mr. Meadows, S.M.'s father, was not included as a respondent by Grandmother, had never been served, and was not provided with notice of the hearing. Mother also asserted that visitation was not in best interest of the oldest child, A.S., and attached a July 24, 2020, letter from A.S.'s therapist that Mother claimed, "clearly shows that even the mention of the possibility of visitation occurring has been harmful to [A.S.]."[8] Lastly, Mother argued that the family court's visitation order "interferes with her constitutional right to parent her children" and would be disruptive to the children and the family unit.

The family court denied Mother's motion with the exception of amending its prior order to reflect the youngest child's correct name. This appeal by Mother followed.

---

[8] Mother did not call A.S.'s therapist to testify at the hearing or present the letter, which predates the hearing, prior to the family court's order. Because the information existed at the time of the hearing, it is improper to consider it as "new evidence" for the purpose of Kentucky Rule of Civil Procedure (CR) 59. *See* CR 59.01(g) ("Newly discovered evidence, material for the party applying, which [she] could not, with reasonable diligence have discovered and produced at the trial."). Because the letter was not timely presented to the family court, we have not considered it during our review.

## II. STANDARD OF REVIEW

We "review the family court's findings of fact under a clearly erroneous standard of review, giving due regard to the opportunity of the family court to judge the credibility of the witnesses." *Blackaby v. Barnes*, 614 S.W.3d 897, 900 (Ky. 2021). We review questions of law *de novo*. *Id.*

## III. ANALYSIS

### A. *Visitation for S.M.*

Contrary to the assertion in Grandmother's appellate brief, she did not formally request visitation with all five children. Her petition, which was filed prior to S.M.'s birth, lists only the four older children. Grandmother never amended the petition to include S.M. Furthermore, neither Grandmother nor her counsel raised the issue of visitation with S.M. with the family court when the matter was called for a hearing.[9] From our review, we can identify nothing in the record to suggest Mother should have been even aware that the family court might include S.M. in its visitation order. This deprived Mother of an opportunity to

---

[9] The family court began the hearing by restating the basic facts. Those facts were that Grandmother was seeking visitation with the children that were previously in her custody because Mother would not allow her to see the children after they were returned to Mother's custody. Grandmother's counsel affirmed the family court's summary without mentioning that Grandmother was also seeking visitation with S.M., who was born after the four older children had been returned to Mother's custody. In fact, S.M. was mentioned only twice during the hearing. First, Grandmother named S.M. when she was asked to list Mother's children. Second, Ms. Floyd stated that she had never been able to see S.M. in response to counsel's question regarding when she last saw Mother's children.

raise any specific objections she might have had to Grandmother's receiving visitation with S.M. In short, Mother was not provided with notice and an opportunity to be heard on visitation for S.M.

Equally problematic is Grandmother's failure to provide S.M.'s father, Andrew Meadows, with notice and an opportunity to be heard. "Before a child custody determination is made . . . notice and an opportunity to be heard . . . shall be given to . . . any parent whose parental rights have not been previously terminated, and any person having physical custody of the child." KRS 403.830(1). A "child custody determination" is defined to include any order of a court providing for visitation with respect to a child. KRS 403.800(3). Mr. Meadows qualifies as S.M.'s parent, KRS 406.011. As such, Mr. Meadows should have been provided with notice and an opportunity to be heard before the family court entered an order for visitation with respect to S.M.

"[T]here is a constitutional dimension to the right of parents to direct the upbringing of their children." *Morton v. Tipton*, 569 S.W.3d 388, 397 (Ky. 2019) (quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 2060, 147 L. Ed. 2d 49 (2000)). Because court-ordered grandparent visitation infringes on the substantive constitutional rights of the parents, such visitation should only be ordered only after a hearing which comports with our fundamental notions of due process. *K.C.O. v. Cabinet for Health and Family Services*, 518 S.W.3d 778, 784

-12-

(Ky. App. 2017). One of the most basic aspects of due process is "that all affected parties be given 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Hilltop Basic Resources, Inc. v. County of Boone*, 180 S.W.3d 464, 469 (Ky. 2005) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976)).

Unquestionably, visitation set by a court against the wishes of the parents is a limitation on the parents' constitutional rights to control the upbringing of their children. Father was not a party to the action and clearly was not provided with notice and an opportunity to be heard. Clearly, this was a situation in which the family court could not grant the relief requested without impacting the rights of Mr. Meadows, a nonparty. "[I]f the court cannot determine the controversy between the parties before it without prejudicing the rights of others, the court must require such persons to be made parties or dismiss the action without prejudice." *Morgan County v. Governor of Kentucky*, 288 Ky. 532, 156 S.W.2d 498, 500 (1941); *Gilland v. Dougherty*, 500 S.W.3d 217, 223 (Ky. App. 2016).

Grandmother asserts that while this may be the case, Mother waived Mr. Meadows's nonjoinder by failing to timely raise it. However, as explained above, we do not find anything in the record which should have put Mother on notice that Grandmother was seeking visitation with S.M. This being the case, we cannot agree with Grandmother that Mother waived this argument by not making it

-13-

prior to entry of the judgment.[10]  In any event, the family court's failure to require Mr. Meadows's joinder prior to ordering visitation with S.M. is the type of palpable error that requires correction even though not timely presented below. *See* CR 61.02.

Given the lack of notice that visitation with S.M. was at issue and the failure to provide the parties, primarily Mr. Meadows, with notice and an opportunity to be heard on that issue, we must vacate the family court's order to the extent that it ordered visitation with S.M. and remand this issue for further proceedings.  In the event Grandmother desires visitation with S.M., the family court should require her to amend her petition to include such a request and to properly join Mr. Meadows as a party respondent.  Both Mother and Mr. Meadows must be provided with notice and an opportunity to be heard prior to any order determining visitation for S.M.[11]  If Grandmother is either unwilling or unable to do so, the family court should dismiss the action with prejudice as it relates to S.M.

---

[10]  In this case, Grandmother should have made the record clear and requested that Mr. Meadows be joined as a necessary party pursuant to CR 19.01.

[11]  In its prior order, the family court found "that [Grandmother] has been . . . sporadically involved with the youngest child."  This finding was clearly erroneous because the extremely limited testimony at the hearing indicated that Grandmother had never been allowed to have any contact with S.M.

## B. *Visitation for the Four Older Children*

We now turn to the order as related to the four older children. We begin by recognizing that this is not a typical grandparent visitation case because, with respect to the four older children, Grandmother was previously awarded temporary custody in the prior DNA cases. This gives her special standing to seek visitation, which exists apart from the standing she enjoys as the children's grandmother. *See* KRS 403.320(4). Certainly, Grandmother's prior status as the temporary custodian of the four older children is a relevant consideration in deciding whether permanent visitation is in the best interest of the four older children. However, this fact, alone, does not compel visitation or create an presumption that such visitation is in the best interest of the children. Rather, it is simply a factor, among many others, that the family court should consider in determining whether visitation is in the best interests of the children.

Although the family court's order is couched in terms of visitation being in the children's best interests, nowhere in the order does the family court make specific findings related to the statutory best interest factors, KRS 403.270(2), or the additional factors our Supreme Court has determined are relevant in disputes related to grandparent visitation. *Walker v. Blair*, 382 S.W.3d 862, 871 (Ky. 2012). The family court's best interest conclusion appears to have flowed almost exclusively from Grandmother's status as a temporary custodian of

-15-

the four older children. To affirm, we would have to imply that the family court considered the best interest factors and determined they supported visitation. We are prohibited from affirming through implication. *Moore v. Moore*, 626 S.W.3d 535, 539 n.5 (Ky. 2021) ("To conclude an implied ruling by a trial court was sufficient would clearly run afoul of the mandates of CR 52.01[.]").

Because it is impossible for us to review the family court's order without knowing the findings of fact it reached in support of its best interest conclusion, we must also vacate the order as it relates to the four older children and remand for additional findings of fact on the best interest factors. On remand, we leave it to the family court's discretion as to whether to allow the parties to present additional proof relating to the four older children or to make its findings based on the prior evidentiary hearing. However, we note that, should Grandmother elect to amend her petition to include S.M., another hearing will be necessary in any event so it may be wise to allow the parties to update the record at that time as it relates to the four older children.

## IV. CONCLUSION

For the foregoing reasons, we vacate the family court's order and remand for additional proceedings, findings of fact, and conclusions of law.

ALL CONCUR.

BRIEF FOR APPELLANT:

Tracy D. Frye
Russell, Kentucky

BRIEF FOR APPELLEE:

Natasha L. Kinnan
Catlettsburg, Kentucky